IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL NO. 3:10cv164-RJC-DSC

| | |
|---|---|
| MERINDA BRYANT, individually and as Administratrix of the Estate of Richard Bryant, ) ) ) ) Plaintiff, ) ) v. ) ) REGIONAL SERVICES, LTD., ) a Georgia Corporation d/b/a ) Southstar Ambulance Service; ) SOUTHERN AMBULANCE SERVICE, ) LTD.; JOHN STEVE RANGEL; and ) TED MAC JARRETT, ) ) Defendants. ) ) | **MEMORANDUM AND RECOMMENDATION AND ORDER** |

**THIS MATTER** is before the Court on Defendants' "Motion to Dismiss Under Rule 12(b)(2) & 12(b)(3), or in the Alternative, Motion to Transfer Venue Pursuant to 28 U.S.C.A. §1404(a)" (document #4), "Affidavit of Jim Adkins" (document #4-1), "Affidavit of Ted M. Jarrett" (document #4-2), "Affidavit of John S. Rangel" (document #4-3) and "Memorandum of Law in Support of Defendants' Motion to Dismiss Under Rule 12(b)(2) & 12(b)(3), or in the Alternative, Motion to Transfer Venue Pursuant to 28 U.S.C.A. §1404(a)" (document #4-4), all filed April 19, 2010, and "Plaintiff's Memorandum in Opposition to Defendants' Motions to Dismiss" (document #5) filed April 23, 2010. On April 30, 2010, Defendants filed their "Reply to Plaintiff's Response in Opposition to Defendants' Motions to Dismiss Under Rule 12(b)(2) & 12(b)(3), or in the Alternative, Motion to Transfer Venue Pursuant to 28 U.S.C.A. §1404(a)" (document #6) and "Affidavit of Jim Adkins" (document #6-1).

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §

636(b)(1)(B), and this Motion is now ripe for the Court's consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that Defendants' Motion to Dismiss be <u>granted</u>, as discussed below.

## I. PROCEDURAL AND FACTUAL BACKGROUND

This action arises out of a motor vehicle accident which occurred on February 3, 2010 in Columbia, South Carolina. Taking the facts as alleged in the Complaint as true, as we must at this stage of the proceeding, Richard Bryant was a patient at Doctor's Hospital in Augusta, Georgia, and was being transported from the hospital to a physical rehabilitation clinic in Winston-Salem, North Carolina. Mr. Bryant was transported by an ambulance owned by Defendant Regional Services, Ltd. doing business as SouthStar ("Regional") and driven by Defendant Ted Mac Jarrett, an employee of Regional. Defendant John Steve Rangel, a paramedic and employee of Regional, was in the rear of the ambulance providing care to Mr. Bryant. Shortly before the accident, Jarrett, the driver of the ambulance, stopped for a snack and to assist Rangel with patient support. Jarrett then returned to his route headed east on Interstate 20 near Columbia, South Carolina. Shortly thereafter, the ambulance ran off the interstate and then back onto the interstate making impact with a concrete barrier. Mr. Bryant was ejected from his stretcher during the accident and sustained an abdominal injury. Following the accident, Mr. Bryant was transported to a Columbia, South Carolina hospital where he later died.

Defendant Regional is a corporation organized under the laws of the state of Georgia with its principal place of business in Augusta, Georgia. Defendant Southern Ambulance Service, Ltd. ("Southern Ambulance") is a corporation organized under the laws of the state of Georgia with its principal place of business in Evans, Georgia. Affiant Jim Adkins is the sole shareholder of both

2

Regional and Southern Ambulance. Regional and Southern Ambulance are in the business of providing ambulance transport services to patients. Defendant Rangel is a resident of and domiciled in the state of Georgia. Rangel was employed by Regional as a paramedic from early 2006 until Fall 2009. Defendant Jarrett is a resident of and domiciled in the state of South Carolina. Jarrett has been employed by Regional as an EMT from August 2008 until the present.

On February 8, 2010, Plaintiff, in her individual capacity, as Mr. Bryant's wife, and in her official capacity as the duly qualified Administratrix for the estate, filed her Complaint in the Superior Court of Gaston County, North Carolina alleging nine causes of action. Plaintiff alleged four of her causes of action as to Regional and Southern Ambulance: (1) breach of contract; (2) fraud, unfair and deceptive trade practices; (3) negligent entrustment; and (4) common law corporate negligence and negligent retention, supervision and training. As to all four Defendants, Plaintiff alleged (1) negligence; (2) professional malpractice; (3) wrongful death; and (4) loss of consortium. On April 12, 2010, Defendants removed the case to the United States District Court for the Western District of North Carolina, alleging the existence of diversity subject matter jurisdiction. Removal has not been challenged and appears proper.

On April 19, 2010, Defendants filed their Motion to Dismiss for lack of personal jurisdiction, or in the alternative to transfer venue. Because the undersigned recommends dismissal for lack of personal jurisdiction, the undersigned has not considered the venue question.

As noted above, Defendants' Motion has been fully briefed and is, therefore, ripe for disposition.

## II. **DISCUSSION**

Defendants contend that the North Carolina long-arm statute, N.C. Gen. Stat. § 1-75.4, does

not confer jurisdiction and therefore, this Court lacks both specific and general jurisdiction over them. Additionally, Defendants argue that even if North Carolina's long-arm statute does confer jurisdiction, the exercise of personal jurisdiction over them offends traditional notions of fair play and substantial justice guaranteed by the Due Process Clause of the Fourteenth Amendment.

Where the Court rules on a 12(b)(2) motion without conducting an evidentiary hearing and relies solely on the Complaint, briefs and affidavits, the burden is on the plaintiff to make a prima facie showing that personal jurisdiction exists. Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989). In evaluating the motion to dismiss for lack of personal jurisdiction, "the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility and draw the most favorable inferences for the existence of jurisdiction." Id.

Analysis of personal jurisdiction has traditionally involved two determinations: "whether the [particular state's] long-arm statute authorizes the exercise of jurisdiction in the circumstances presented and ... whether the exercise of jurisdiction comports with Fourteenth Amendment due process standards." Ellicott Mach. Corp. v. John Holland Party Ltd., 995 F.2d 474, 477 (4th Cir. 1993). The North Carolina Supreme Court has liberally construed the North Carolina long-arm statute to extend the full jurisdictional powers permissible under federal due process. Vishay Intertechnology, Inc. v. Delta Int'l Corp., 696 F.2d 1062, 1065 (4th Cir. 1982) (citing Dillon v. Numismatic Funding Corp., 291 N.C. 674, 676, 231 S.E.2d 629, 630 (1977)). Therefore, "the two-step inquiry merges into a single issue of whether [defendant] has the requisite minimum contacts with North Carolina to satisfy due process." CEM Corporation v. Personal Chemistry AB, 192 F. Supp.2d 438, 440 (W.D.N.C. 2002), aff'd No. 02-1369, 2003 WL 122510 (4th Cir. Jan. 15, 2003).

The exercise of personal jurisdiction comports with due process when the defendant purposefully establishes "minimum contacts" in the forum state. International Shoe Co. v.

4

Washington, 326 U.S. 310, 316 (1945); Ellicott Mach., 995 F.2d at 477. In addition, the court's exercise of personal jurisdiction must comport with traditional notions of "fair play and substantial justice." World Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980).

Later cases have emphasized that the minimum contacts must be "purposeful." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985). This "purposeful" requirement rests on the basic premise that traditional notions of fair play and substantial justice are offended by requiring a non-resident to defend himself in a forum state when the non-resident never purposefully availed himself of the privilege of conducting activities within the forum state, thus never invoking the benefits and protections of its laws. See Hanson v. Denckla, 357 U.S. 235, 253 (1958). To justify the exercise of personal jurisdiction over a non-resident defendant, "defendant's contacts with the forum state must have been so substantial that they amount to a surrogate for presence and thus render the exercise of sovereignty just." Consulting Engineers Corp. v. Geometric Ltd., 561 F.3d 273, 277 (4th Cir. 2009) (quoting ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 623 (4th Cir. 1997)).

A court's exercise of personal jurisdiction may be specific or general. General personal jurisdiction exists when a defendant has "continuous and systematic" contacts with the forum state. Helicopteros Nacionales de Columbia S.A. v. Hall, 466 U.S. 408, 414-15 (1983). Specific jurisdiction involves the exercise of personal jurisdiction over a defendant in an action arising out of the defendant's contacts with the forum state. Id. Plaintiff asserts that this Court has specific personal jurisdiction over the Defendants, therefore the undersigned will forgo any analysis of general jurisdiction. Each defendant's contacts with a forum state must be assessed individually. Calder v. Jones, 465 U.S. 783, 790 (1984).

The Fourth Circuit "has synthesized the due process requirements for asserting specific personal jurisdiction in a three part test in which we consider (1) the extent to which the defendant

purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." Consulting Engineers Corp. v. Geometric Ltd., 561 F.3d 273, 278 (4th Cir. 2009) (quoting ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002)).

Although there is no clear formula for determining what constitutes "purposeful availment," Courts have considered various factors which include:

> whether the defendant maintains offices or agents in the forum state, see McGee v. Int'l Life Ins. Co., 355 U.S. 220, 221 (1957); whether the defendant owns property in the forum state, see Base Metal Trading, Ltd. v. OJSC, 283 F.3d 208, 213 (4th Cir. 2002); whether the defendant reached into the forum state to solicit or initiate business, see McGee, 355 U.S. at 221; Burger King, 471 U.S. at 475-76, 105 S.Ct. 2174; whether the defendant deliberately engaged in significant or long-term business activities in the forum state, see Burger King, 471 U.S. at 475-76, 481, 105 S.Ct. 2174; whether the parties contractually agreed that the law of the forum state would govern disputes, see Burger King, 471 U.S. at 481-82, 105 S.Ct. 2174; whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship, see Hirschkop & Grad, P.C. v. Robinson, 757 F.2d 1499, 1503 (4th Cir. 1985); the nature, quality and extent of the parties' communications about the business being transacted, see English & Smith [v. Metzger],901 F.2d [36] at 39; and whether the performance of contractual duties was to occur within the forum, see Peanut Corp. of Am. v. Hollywood Brands, Inc., 696 F.2d 311, 314 (4th Cir. 1982).

Consulting Engineers, 561 F.3d at 278. If, and only if, the plaintiff satisfies the first prong of this test for specific jurisdiction does the Court move on to consider prongs two and three. Id.

Plaintiff argues for specific jurisdiction over all Defendants based on the fact that they hold themselves out as a highly skilled service providing critical care ambulance services for long distance transport of unstable patients. Plaintiff asserts that specifically in this instance, the Defendants held themselves out as a special team that was specially equipped to transport Mr. Bryant to North Carolina. Additionally, Plaintiff points to the fact that Defendants make patient

6

transfers to North Carolina approximately twice a year, including Defendant Jarrett transporting a patient to North Carolina not more than six months prior to the subject incident. Most importantly, Plaintiff argues that the "Patient Care Report," which is a Regional form, constitutes a contract to perform a service in North Carolina and is sufficient to satisfy minimum contacts. Plaintiff adds that the payment portion of the form which addresses Medicare, Medicaid and insurance claim submission and financial responsibility provides support for her argument that Defendants have minimum contacts with North Carolina because they have purposefully availed themselves of the benefits and protections of the state by seeking North Carolina benefits.

Defendant Regional, a Georgia corporation, does not have an office, post office box, registered agent, employee or property in North Carolina. Regional does not solicit business in North Carolina by mail, e-mail, facsimile, telephone or otherwise. Regional's website specifically references Georgia and South Carolina and the ambulance services offered there but makes no mention of North Carolina. Regional makes less than three trips a year that require travel to or through North Carolina out of 10,000 annual ambulance trips. This does not constitute routine or substantial activity.

With regard to the "Patient Care Report," this is a standard form provided by Regional and not an explicit contract between Defendants and Mr. Bryant or Plaintiff. This is not a contract where the terms were negotiated or tailored to the parties and the specific transport. Rather, this was the standard reporting form that Regional used when transporting individuals in their ambulances. The report documents the patient's vital signs and actions taken during transport. It is tenuous at best to argue that this is a contract. The form was completed in Augusta, Georgia at Doctor's Hospital. All relevant parties, including Mr. Bryant, were in Georgia when the report was completed. The individual who signed on Mr. Bryant's behalf was, on information and belief, an employee of

7

Doctor's Hospital in Augusta, Georgia. Defendants Jarrett and Rangel completed the form on behalf of Regional, a Georgia corporation. Regional did not reach into North Carolina to solicit any contact with Mr. Bryant or the Plaintiff and in fact, there is no evidence that Regional ever had any contact with the Bryant family in North Carolina.

While <u>Staley v. Homeland, Inc.</u>, 368 F. Supp. 1344, 1350 (E.D.N.C. 1974) did hold that if a contract is actually to be performed in North Carolina jurisdiction will lie, the holding was limited to contracts which had a "substantial connection" with the state. Based on Regional's lack of contact with North Carolina and the fact that the undersigned does not find this form to be a contract, as detailed above, the fact that the ambulance was going to deliver Mr. Bryant to a rehabilitation center in Winston-Salem, North Carolina is not substantial enough of a connection to establish that Defendant Regional has purposefully availed itself of the benefits and privileges of conducting business in North Carolina. Furthermore, the section of the form which addresses Medicare, Medicaid and insurance claim submission and financial responsibility does not contemplate where the payment for services must come from but simply states the fact that Regional wishes to be paid somehow for its services. Additionally, the form does not identify whether Mr. Bryant is a Medicare or Medicaid recipient. Therefore, there is no way to know if North Carolina would be involved at all for the payment of the transport of Mr. Bryant. Based on these facts, the undersigned finds that Regional has not purposefully availed itself of the benefits and privileges of North Carolina and therefore, specific personal jurisdiction does not lie with regard to Regional.

Although Plaintiff argues that all the Defendants were collectively subject to specific personal jurisdiction under the arguments discussed above, the undersigned must examine each individual separately to determine if they have purposefully availed themselves of the benefits and privileges of North Carolina.

Defendant Southern Ambulance, a Georgia corporation, has no office, telephone listing, post office box, mailing address, bank account, advertising, or registered agent in North Carolina. Southern Ambulance has never owned any property in North Carolina nor does it solicit customers or business in North Carolina. In fact, no ambulance owned by Southern Ambulance has ever traversed a North Carolina highway. Furthermore, no vehicles or individuals involved in this litigation were owned or employed by Southern Ambulance. Southern Ambulance has no contacts with North Carolina. Therefore, Southern Ambulance has not purposefully availed itself of the privilege of conducting activities in North Carolina and specific personal jurisdiction does not lie with regard to Southern Ambulance.

With regard to Defendant Rangel, he is a resident of and domiciled in the state of Georgia. He was employed by Regional as a paramedic from early 2006 until Fall 2009. He did attend college at Methodist College in Fayetteville, North Carolina from 1981 to 1984; however, he has not been employed in North Carolina since working at Methodist College and has not sought employment in North Carolina since that time. Furthermore, his only contacts with North Carolina are an ambulance trip where he was working as an attendant in the 1990s and another trip passing through North Carolina as an ambulance attendant in 2008. These isolated trips do not constitute purposeful availment of the benefits and protections of North Carolina. Additionally, any alleged injurious acts Rangel committed occurred outside North Carolina. Based on these facts, Rangel has not purposefully availed himself of the privilege of conducting activities in North Carolina and specific personal jurisdiction does not lie with regard to Rangel.

With regard to Defendant Jarrett, he is a resident of and domiciled in the state of South Carolina. Jarrett has been employed by Regional as an EMT from August 2008 until the present. All employment that Jarrett has held during his lifetime has been in either South Carolina or

Georgia. He has never been employed in North Carolina, nor has he sought employment in North Carolina. His only contact with North Carolina was a trip from South Carolina to UNC Medical Center at Chapel Hill, North Carolina. This single trip does not constitute purposeful availment of the benefits and protections of North Carolina. Additionally, any alleged injurious acts Jarrett committed occurred outside North Carolina. Based on these facts, Jarrett has not purposefully availed himself of the privilege of conducting activities in North Carolina and specific personal jurisdiction does not lie with regard to Jarrett.

Based on the above analysis, the undersigned finds that Plaintiff has not satisfied her burden of showing that each of the Defendants purposefully availed themselves of the privileges of conducting business in North Carolina and therefore, the undersigned respectfully recommends that Defendants' Motion to Dismiss for lack of personal jurisdiction be GRANTED.[1]

## III. ORDER

**IT IS HEREBY ORDERED** that all further proceedings in this action, including <u>all</u> discovery, are **STAYED** pending the District Court's ruling on this Memorandum and Recommendation and Order.

## IV. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that the Defendants' "Motion to Dismiss Under Rule 12(b)(2) & 12(b)(3), or in the Alternative, Motion to Transfer Venue Pursuant to 28 U.S.C.A. §1404(a)" (document #4) be **GRANTED** and the Complaint **DISMISSED WITHOUT PREJUDICE.**

## V. NOTICE OF APPEAL RIGHTS

---

[1] Since the undersigned has determined that none of the Defendants fall within the first prong of the jurisdictional analysis, the undersigned will not discuss prongs two and three.

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)©, written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Robert J. Conrad, Jr.

**SO RECOMMENDED AND ORDERED.**

Signed: May 13, 2010

David S. Cayer
United States Magistrate Judge